UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

BEAU BOLLINGER,
a citizen and resident of Missouri,

       Plaintiff,

v.

NCL (BAHAMAS) LTD.,
d/b/a NORWEGIAN CRUISE LINES,
a Bermuda corporation, SEABREEZE INN, a
Honduran Corporation d/b/a "ISLAND
EXCURSIONS"

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BEAU BOLLINGER, a citizen and resident of the State of Missouri, sues Defendants NCL (BAHAMAS) LTD., a Bermuda corporation with its principal place of business in Florida doing business as NORWEGIAN CRUISE LINES; and SEABREEZE INN, a Honduran Corporation doing business as "ISLAND EXCURSIONS" and states as follows:

## JURISDICTION, VENUE AND PARTIES

1.    This is an action for damages in excess of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

2.    Plaintiff BEAU BOLLINGER is *sui juris* and is a resident and citizen of the State of Missouri.

3.    Defendant NCL (BAHAMAS) LTD. is a Bermuda Corporation doing business as NORWEGIAN CRUISE LINES (hereinafter "NCL") with its principal place of business in Miami,

Miami-Dade County, Florida.  NCL is therefore a citizen both of Bermuda and of Florida for purposes of determining subject matter jurisdiction over this action.

4.      Defendant, SEABREEZE INN (hereinafter "TOUR OPERATOR") is a Honduran corporation doing business as "ISLAND EXCURSIONS".

5.      Subject matter jurisdiction exists based on admiralty pursuant to 28 U.S.C. §1332, since Plaintiff is a citizen and resident of the State of Missouri, Defendant NCL is a citizen both of Bermuda and of Florida for jurisdictional purposes, and Defendant SEABREEZE INN ("TOUR OPERATOR") is a Honduran corporation.  The damages and injuries to Plaintiff alleged below, including cervical vertebral fractures requiring surgical repair, support an award of damages in excess of the jurisdictional amount of $75,000.

6.      Defendants, at all times material hereto, personally or through an agent:

      a.      Operated, conducted, engaged in or carried on a business venture in this state and/or   county or had an office or agency or principal place of business in this state and/or county;

      b.       Were engaged in substantial activity within this state;

      c.       Operated vessels in the waters of this state;

      d.      Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

      e.      The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

      f.      Defendants were engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard their vessel.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

7.      In the operative ticket contract, NCL requires fare paying passengers such as the Plaintiff to bring any lawsuit against it arising out of injuries or events occurring on the cruise voyage in this federal judicial district. Accordingly, venue is proper in this Court.

8.      Venue is also proper in this district because Defendants' principal place of business is located within this district.

9.      The Plaintiff has complied with all conditions precedent to bringing this action. The Plaintiff reported the accident to the ship's medical crew shortly after it occurred, and written medical records were prepared onboard the ship.  Furthermore, the Plaintiff gave the Defendant NCL by letter a timely written notice of claim, as required by the ticket contract.  A copy of the letter to Defendant NCL is attached as Exhibit 1.

### THE TOUR OPERATOR'S ACTIVITIES IN FLORIDA SATISFY A FINDING OF SPECIFIC JURISDICTION UNDER FLORIDA STATUTE §48.193(1)(a).

10.      At all times material hereto, the activities of the Defendant TOUR OPERATOR in Florida satisfy the specific jurisdiction provision of Florida Statute §48.193(1)(a), by acts that include, but are not limited to, (a) maintaining a place of business in Miami, Florida; (b) reaching out to Florida-based cruise lines, insurers, cruise industry associates, and/or premium financing companies for purposes of operating, conducting, engaging in, and/or carrying on a business and/or business venture in this state; and/or (c) contractually agreeing to indemnify Florida-based cruise lines (entities mostly located in Miami and Fort Lauderdale) for any harm resulting to cruise passengers, thereby insuring a "person, property, or risk located within this state" and/or planning Honduran excursions with the assistance of Defendant NCL out of NCL's offices in Miami, Florida.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

**THE TOUR OPERATOR'S CONTRACT WITH NCL MEETS ALL REQUIREMENTS
TO SATISFY A FINDING OF SPECIFIC JURISDICTION UNDER FLORIDA STATUTE
§48.193(1)(a)(9).**

11.     At all times material hereto, the TOUR OPERATOR entered into a contract with
NCL concerning the subject excursion, which (a) contains a choice-of-law clause designating
Florida law as the governing law; (b) contains a provision whereby the TOUR OPERATOR agree
to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not
less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate
not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of
the contract that is a resident of Florida or incorporated under the laws of Florida.  Therefore, the
contract between NCL and the TOUR OPERATOR meets all requirements to satisfy a finding of
specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

**THE TOUR OPERATOR'S CONTINUOUS AND SYSTEMATIC GENERAL BUSINESS
CONTACTS WITH FLORIDA SATISFY A FINDING OF GENERAL JURISDICTION
UNDER FLORIDA STATUTE § 48.193(2).**

12.     At all times material hereto, the TOUR OPERATOR has engaged in substantial and
not isolated activity within this state, including, but not limited to: (a) reaching out to cruise lines
in Florida and establishing long-term partnerships with them; (b) deriving a substantial portion of
their revenues from their business with Florida-based cruise lines; (c) periodically traveling to
Miami to meet with cruise line executives for purposes of maintaining the business relationships
and/or obtaining new business; (d) procuring insurance through companies in Florida;
(e) maintaining Florida entities as "Agents of Record" for insurance purposes; (f) agreeing to
insure and indemnify entities in Florida; (g) signing premium financing agreements with Florida
entities in order to obtain a loan to pay for liability insurance premiums; (h)  buying parts and/or
supplies from Florida-based suppliers to operate their excursions; (i) signing powers of attorney

and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; (j) participating in cruise industry trade shows in Miami (e.g., Sea trade); (k) maintaining active membership in Florida Caribbean Cruise Association, based in Florida, and/or planning excursions, including the subject excursion, with the assistance of NCL out of NCL's offices in Miami, Florida.

13.     At all times material hereto, the TOUR OPERATOR has been in the business of providing excursions to cruise line passengers in Honduras through Florida-based cruise lines, including NCL, and/or its affiliates.  By being under contract with the Florida-based cruise lines, the TOUR OPERATOR receives the benefit of the cruise lines' advertising and promotional efforts.

14.     Additionally, at all material times, the TOUR OPERATOR coordinates its ticket sales, and ancillary activities specifically relevant to the liability in this case such as transportation, by and through Miami based employees of NCL.  Specifically, NCL shoreside employees based in Miami tasked with selling tickets for the subject excursion are constantly in communication with the TOUR OPERATOR's employees about their capacity for individual excursions and their ability to obtain adequate transportation for NCL passengers for purposes of determining how many tickets can be sold for any specific excursion.  To the extent NCL's passengers represent more demand than the TOUR OPERATOR is capable of handling, NCL and the TOUR OPERATOR work to increase their capacity capabilities so the two companies can sell additional tickets.  At times, including in the case of the Plaintiff, that involves attempting to obtain additional transportation options, when the demand for excursion tickets exceeds the transportation capacity of the TOUR OPERATOR, as it did in this case.

15.     At all times material hereto, the Tour Operator's arrangement with the Florida-based cruise lines and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  Herein, unlike *Daimler*, the Plaintiff is suing a Florida-

based cruise line (NCL) for injuries sustained while participating in an excursion operated by agents of the cruise line (the TOUR OPERATOR) -- agents set up almost exclusively to do business with cruise lines (a majority of which are based in Florida). Further unlike *Daimler*, NCL is "at home" in this jurisdiction because NCL maintains its principal place of business in Florida. Thus, under *Daimler*, the TOUR OPERATOR is also deemed "at home" in this jurisdiction by their direct and indirect contacts with Florida (through the Florida-based cruise lines).

### THE TOUR OPERATOR'S ACTIVITIES IN FLORIDA SATISFY A FINDING OF JURISDICTION UNDER FED. R. CIV. P. 4(K)

16.     At all times material hereto, the TOUR OPERATOR is also subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) the instant maritime tort claims arise under federal law; (b) the TOUR OPERATOR is not subject to jurisdiction in any state's courts of general jurisdiction; and (c) exercising jurisdiction over the TOUR OPERATOR is consistent with the United States Constitution and laws based on the TOUR OPERATOR'S minimum contacts with the United States as a whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. These minimum contacts are set forth in the above allegations, and include, but are not limited to, the TOUR OPERATOR's location and operation in the United States, as well as marketing, promoting, and selling tickets for its excursions in the United States as well as planning individual excursions with the cruise line, including transportation to and from the excursions.

### LIABILITY AND DAMAGE ALLEGATIONS COMMON TO ALL COUNTS

17.     At all material times, the Defendant was engaged in the business of operating maritime cruise vessels for fare paying passengers and for this purpose operated, among other vessels, the NCL "PRIMA."

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

18.     At all material times, including the injury date of February 28, 2024, the Plaintiff was a fare paying passenger who booked a voyage onboard the NCL "PRIMA," which offered among other activities shore excursion activities at a port of call in Roatan, Honduras.

19.     Upon information and belief, NCL entered into an agreement with TOUR OPERATOR to provide certain snorkeling-related tour excursions in Roatan, Honduras, (hereinafter "TOUR OPERATOR"), in which NCL agreed to market, meaning offer, guided snorkeling tours to its cruise passenger(s), and sell, meaning contract with and collect money from, its passengers, on behalf of TOUR OPERATOR from its passengers. In turn, NCL contracted with TOUR OPERATOR for TOUR OPERATOR to provide the services, i.e., the snorkeling activities, offered by NCL during the subject excursion.

20.     NCL markets the subject excursion through its website, pre-cruise and on board print promotional and sales materials, onboard announcements, on board excursion desk and onboard television programming.

21.     Cruise passengers cannot purchase shore excursions, including the snorkeling excursion referenced in Paragraph 19, except through NCL. Passengers can purchase shore excursions on NCL's website during the NCL booking process or on the cruise ship during the voyage.

22.     While in the process of booking the cruise on the NCL website, NCL bombarded Plaintiff with different shore excursions to purchase. One of those excursions was the "ISLAND ADVENTURE" including the subject snorkeling activity.

23.     Relying upon the advertisement and information provided by NCL, Plaintiff chose the "ISLAND ADVENTURE" including the subject snorkeling activity and purchased it from NCL's website during the booking process.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

24.     The fee for the excursion was charged to and collected from the Plaintiff by NCL.

25.     Based upon the information and documents provided by NCL to Plaintiff during the booking process, the fact that Plaintiff purchased the subject excursion tickets directly from NCL, and in reliance on the information provided by NCL, Plaintiff reasonably believed that there was a contract between Plaintiff and NCL to provide the excursion and that the subject excursion was either operated by NCL or through an agent/partner of or service provided hired by NCL. Moreover, Plaintiff reasonably albeit mistakenly believed that an excursion offered, marketed by, and purchased from NCL, its agent (disclosed or undisclosed), and/or service provider would adhere to the highest safety standards in the industry as represented in promotional and marketing materials.

26.     To all outward appearances, NCL contracted with Plaintiff to provide the subject excursion and NCL was the operator of the excursion and/or the excursion was being provided by an agent/partner and/or service provider that was fully vetted and hired by NCL.  Furthermore, no representations contained in any of the fine print of NCL's literature or website ever expressly advised Plaintiff that the circumstances were otherwise and/or that the well-recognized industry wide safety standards would not govern the excursion.

27.     Plaintiff would not have participated in the subject excursion if Plaintiff had known the excursion was neither operated by NCL nor operated alternatively by a NCL service provider or agent adhering to well-recognized industry wide safety standards.

28.     NCL contracted with Plaintiff to provide the subject excursion services and/or the services were provided by an agent/partner/joint-venturer of NCL, namely TOUR OPERATOR, as manifested by NCL's marketing information and materials.

29.     NCL never identified TOUR OPERATOR as the owner and operator of the

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

excursion; to the extent Plaintiff was aware of TOUR OPERATOR at all, Plaintiff understood TOUR OPERATOR to be an agent/partner/joint venturer and/or service provider hired by NCL to provide the snorkeling activity offered by NCL.

30.     NCL obtains payment for the excursions online and/or onboard the cruise through the guests' onboard account.

31.     At all times material hereto, NCL participated in the income and losses generated by the operation of the subject excursion.

32.     NCL exercises control over the subject excursion including the snorkeling activity in its requirements for its operation, insurance and safety.

33.     NCL has control over the arrangement, marketing and sales of the subject excursion.

34.     NCL passengers cannot book the subject excursion without booking directly through NCL.

35.     TOUR OPERATOR is a service provider hired to provide the subject excursion that NCL agreed by contract to provide, as an agent of NCL, a partner with NCL and/or a joint venturer with NCL. Any representations of NCL to the contrary do not control the legal status of the parties. Further, even if the excursion operator were an independent contractor, NCL is not relieved of its duty of care to passengers with whom it contracted simply because NCL hires a contractor to provide the services offered by NCL and/or to verify that its representations made in its literature and elsewhere about its excursions being operated in a safe manner in accordance with applicable well recognized minimal safety standards and/or that participants would be safe while participating.

36.     The subject excursion is an inherently and foreseeably dangerous activity, liability

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

for which NCL cannot delegate, and remains liable to Plaintiff.

37.     Excursions such as the subject excursion are planned over a period several months in advance as passengers frequently purchase tickets for the excursions during the process of purchasing tickets for the cruise itself.  As passengers purchase excursion tickets, NCL's shoreside employees and the TOUR OPERATOR's employees collectively make decisions regarding the size of the excursion, and capacity for the excursion, taking into account the ability to obtain suitable and safe transportation from the ship to the excursion and back.   To the extent additional transportation is required to meet demand, the Defendants collectively attempt to obtain it, and NCL does not sell a ticket for an excursion unless it has communicated with the TOUR OPERATOR and confirmed that sufficient transportation is available.

38.     The Defendants remain in constant contact during the voyage itself for the purpose of planning and logistically coordinating the excursion and transportation.  Ship personnel inform the TOUR OPERATOR when its booked passengers can be available at port, and also informs the TOUR OPERATOR when the passengers need to be back at the ship so that the ship can sail to its next destination.  The TOUR OPERATOR in turn advises the ship as to the status of its excursions, and any delays in terms of the excursion or transportation which would cause the passengers to be late to arrive back at the ship.

39.     On February 28, 2024, the NCL "PRIMA" called on Roatan, Honduras.

40.     On February 28, 2024, Plaintiff participated in the subject excursion and presented himself for transport back to the ship.  However, the Defendants had failed to make the necessary arrangements for safe, adequate transportation (i.e., charter buses) to transport all passengers including Plaintiff back to the ship.  Due to the resulting rush to get back to the ship in order to permit the voyage to remain on schedule, the Defendants coordinated for ad hoc alternative

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

transportation, in the form of pickup trucks.  The Plaintiff was asked to sit in the back of a pickup truck during the ride back.  As he was climbing into the bed of the pickup truck, the driver accelerated prematurely and without warning, causing the Plaintiff to fall out of the pickup truck and to the ground, thereby sustaining serious injuries.

41.     As a direct and proximate result of the incident described in Paragraph 40, the Plaintiff was injured in and about his body and extremities, sustaining injuries including injuries to his cervical vertebrae requiring surgical repair, suffered pain therefrom, and sustained mental anguish, disfigurement, disability and the inability to lead a normal life, and aggravation or activation of preexisting conditions. Furthermore, he incurred medical, hospital, and other out of pocket and health care expenses in the past and is reasonably certain to occur such expenses in the future as a result of his injuries.  Furthermore, he lost earnings and earning capacity and will continue to lose earning capacity in the future. These damages are permanent or continuing in their nature and the Plaintiff will continue to sustain and incur these damages in the future.

### COUNT I – NEGLIGENT FAILURE TO WARN
### (AGAINST DEFENDANT NCL)

42.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

43.     At all material times, Defendant NCL, individually and/or by and through its service providers, agents, servants, joint venturers and/or employees owed Plaintiff non-delegable duties, including a duty to warn of dangers of which it as a common carrier knew or reasonably should have known. This duty extends beyond the port to places where the passenger is invited to or may reasonably be expected to visit. NCL advertised, marketed, sold and contracted with Plaintiff to provide the subject excursion and, thus, should reasonably have expected Plaintiff to visit the excursion location and participate in it.

44.     As alleged above, due to NCL's involvement in the excursion planning process, NCL at all times either knew or should have known that the TOUR OPERATOR did not have access to sufficient safe transportation to and from the excursion and would be required to make ad hoc and hence risky arrangements for additional transportation as was done in this case.

45.     Additionally, as alleged above, NCL knew or should have known that it would not be possible to stay on schedule unless alternative, substandard transportation in the form of pickup trucks were used.

46.     NCL further knew or should have known that riding in the bed of a pickup truck was an inherently unsafe manner of transportation.

47.     Conversely, the Plaintiff was not aware that he would be asked to ride in the back of a pickup truck until he was instructed to do so and informed that if he did not he would remain stranded in Honduras while the ship left to its next destination.

48.     Defendant NCL breached its duty to warn Plaintiff of the danger posed by the lack of adequate transportation and was thereby negligent.

49.     As a direct and proximate result of one or more of the Defendant's negligence as described above, the Plaintiff was injured as alleged in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant NCL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

<u>**COUNT II - NEGLIGENT SELECTION OF TOUR OPERATOR**</u>
<u>**(AGAINST DEFENDANT NCL)**</u>

50.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

51.     At all material times, NCL owed passengers, including Plaintiff, the duty to exercise reasonable care to hire a competent and careful tour operator/service provider to perform the excursion. NCL knew or should have known that its duty of reasonable care required that a reasonable investigation and background check be performed by it before entering into an agreement with TOUR OPERATOR.

52.     As alleged above, due to NCL's involvement in the excursion planning process, NCL at all times either knew or should have known that TOUR OPERATOR did not have access to sufficient safe transportation to and from the excursion site and would be required to make ad hoc and hence risky arrangements for additional transportation as was done in this case.

53.     Notwithstanding NCL's actual or constructive notice that the TOUR OPERATOR did not have access to sufficient safe transportation to and from the excursion site for its passengers, NCL engaged the TOUR OPERATOR to operate the excursion anyway and thereby breached its duties to hire a competent and careful tour operator/service provider to perform the subject excursion.

54.     As a direct and proximate result of one or more of the Defendant's negligent acts as described above, the Plaintiff was injured as described in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant NCL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## <u>COUNT III - NEGLIGENT RETENTION OF TOUR OPERATOR</u><br><u>(AGAINST DEFENDANT NCL)</u>

55.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

56.     At all material times, NCL owed passengers, including Plaintiff, the duty to exercise reasonable care, when reviewing its ongoing relationships with vendors and tour operators, to retain a competent and careful tour operator/service provider to continue to perform the excursions offered.

57.     As alleged above, due to NCL's involvement in the excursion planning process, NCL at all times either knew or should have known when reviewing TOUR OPERATOR's ongoing operations that TOUR OPERATOR did not have access to sufficient safe transportation to and from the excursion site and would be required to make ad hoc and hence risky arrangements for additional transportation as was done in this case.

58.     Notwithstanding NCL's actual or constructive notice that the TOUR OPERATOR did not have access to safe transportation to and from the excursion site for its passengers, NCL continued to retain the services of the TOUR OPERATOR to conduct the excursion, after acquiring such actual or constructive knowledge, and was thereby negligent.

59.     As a direct and proximate result of one or more of the Defendant's negligent acts as described above, the Plaintiff was injured as described in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant NCL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## COUNT IV – NEGLIGENCE BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL (AGAINST DEFENDANT NCL)

60.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

61.     At all times material thereto, NCL made manifestations that caused Plaintiff to believe that TOUR OPERATOR had authority to act for the benefit of NCL. These manifestations included:

   a. NCL advertised in series of internet, brochure, and other media about the availability of the snorkeling excursion;

   b. NCL allowed its name to be utilized in connection with the advertising of TOUR OPERATOR, and the subject excursion;

   c. NCL made all arrangements for the subject excursion without effectively disclosing to, and warning Plaintiff that the subject excursion was being run by another entity, and/or entities, unrelated to NCL;

   d. NCL represents on its website, at its dedicated shipboard excursion desk, and in its shore excursion brochure, that excursions are planned by partners, with no further explanation, warning or material information to allow Plaintiff and others to make informed or knowing decisions regarding the role and fitness of the partners or the passengers' vacation choices and safety;

   e. NCL marketed the subject excursion using its company logo on its website and/or in its brochures and/or its ship, and in pre-cruise advertising, online and other promotional materials, without effectively disclosing to Plaintiff that said excursion was being run by another entity and/or entities;

   f. NCL maintains an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to Plaintiff that said excursion was being run by another entity and/or entities;

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

g.  NCL recommended to Plaintiff not to engage in excursions, tours, activities that are not sold through NCL, as NCL has no familiarity with other tours or their operations, despite the ready availability of the same excursions once passengers arrive at the port of call or before over the internet, often at lower prices, solely to protect NCL's profits;

h.  NCL incorrectly assured Plaintiff that its insured partners adhered to the highest safety standards in the industry;

i.  The fee for the excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by NCL;

j.  Plaintiff's receipts for the purchase of the subject excursion were issued exclusively by NCL; and/or

k.  NCL integrated excursions into the cruise vacation experience- as port experiences, often unique to the foreign port of call, that are the *sine qua non* of cruising.

62.  Plaintiff reasonably relied on the above, as alleged, to his detriment, so as to believe that TOUR OPERATOR personnel were employees and/or agents and partners of NCL when choosing the subject excursion.

63.  It was reasonable for Plaintiff to believe that TOUR OPERATOR personnel were NCL's employees and/or agents because the Plaintiff booked, paid for and made all necessary arrangements for the subject shore excursion with NCL. NCL's actions caused Plaintiff to believe that TOUR OPERATOR had authority to act on NCL's behalf. At no time did TOUR OPERATOR represent to or warn its passengers in general or the Plaintiff in particular, in a meaningful way, that TOUR OPERATOR's personnel were not agents, partners or employees of NCL.

64.     Plaintiff's reasonable reliance was detrimental because Plaintiff would not have booked, paid for and/or participated in the subject excursion and therefore incurred any injuries had the Plaintiff known the subject excursion was neither operated by NCL or an agent of NCL nor properly and diligently vetted by NCL.

65.     On February 28, 2024, NCL and/or TOUR OPERATOR and/or their agents, employees, and/or staff breached their duty to provide Plaintiff with reasonable care under the circumstances, in one or more of the following ways:

    a.   Failing to provide a reasonably safe excursion;

    b.   Failing adequately to ensure that the subject excursion was reasonably safe for participants;

    c.   Failing to provide adequate, safe transportation to and from the excursion site,

    d.   Failing to exercise care in transporting passengers including the Plaintiff to and from the excursion.

66.     The foregoing acts of negligence of NCL and/or TOUR OPERATOR were a foreseeable, direct and proximate cause of the Plaintiff's injuries.

67.     As a direct and proximate result of one or more of the Defendant's negligent acts as described above, the Plaintiff was injured as described in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant NCL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## COUNT V - NEGLIGENCE
## (AGAINST TOUR OPERATOR)

68.     Plaintiff realleges, adopts and incorporates by reference the allegations of Paragraphs 1 through 41 and further alleges the following matters:

69.     At all material times, the TOUR OPERATOR had a duty to the Plaintiff to operate the subject excursion with reasonable care, which includes the duty to act with reasonable care to provide safe transportation to and from the excursion.

70.     TOUR OPERATOR knew or should have known how many passengers had signed up for the excursion, and therefore knew or should have known what the transportation requirements for the excursion were.

71.     Instead of arranging for a suitable amount of safe transportation to and from the ship, the TOUR OPERATOR breached its duty of reasonable care by providing pick-up trucks on an ad hoc basis, instructing passengers such as the Plaintiff to ride in the back of the truck, which the TOUR OPERATOR knew or should have known was an inherently dangerous method of transportation.

72.     Alternatively, the TOUR OPERATOR was negligent in the way in which the pick-up trucks were operated, as the driver accelerated prematurely and without warning prior to the Plaintiff being securely seated in the bed of the truck.

73.     As a direct and proximate result of one or more of the Defendant TOUR OPERATOR's negligent acts as described above, the Plaintiff was injured as described in Paragraph 40 and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law against the Defendant TOUR OPERATOR, SEABREEZE INN d/b/a ISLAND ADVENTURES,

as well as court costs and further demands trial by jury for all such issues so triable as a matter of right.

<u>**COUNT VI - NEGLIGENCE BASED ON JOINT VENTURE**</u>

74.      Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

75.      At all times material thereto, NCL and TOUR OPERATOR were engaged in a joint venture to provide excursions to passengers aboard NCL's ship(s).

76.      At all times material thereto, NCL and TOUR OPERATOR entered into an agreement where NCL would sell the subject excursion to its passengers and TOUR OPERATOR would operate said excursion.

77.      As part of the joint venture, NCL arranged for, sponsored, recommended, marketed, operated, sold and/or collected money for the subject excursion and the money was then shared between NCL and TOUR OPERATOR. As its part of the joint venture, NCL and/or TOUR OPERATOR provided labor and/or operated the subject excursion.

78.      NCL, on behalf of the joint venture, charged a fee to passengers who utilized the excursion(s). The fee was split between NCL and TOUR OPERATOR.

79.      At all times material thereto NCL and TOUR OPERATOR had joint and/or shared control over aspects of the joint venture.

80.      TOUR OPERATOR had control over the day-to-day working of the excursion(s).

81.      NCL exercises control over the TOUR OPERATOR by way of its requirements for its operation, insurance, indemnification, and safety.

82.      NCL had control over the arrangements, marketing, and sales of the excursion, and distribution of excursion tickets onboard its vessels including the NCL "PRIMA."

83.     At all times material thereto, NCL and TOUR OPERATOR shared a common purpose: to sell and operate the subject snorkeling excursion for a profit.

84.     At all times material thereto, NCL and TOUR OPERATOR had a propriety and/or ownership interest in the subject excursion. NCL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such an excursion, and TOUR OPERATOR had a proprietary interest in the time and labor expended in operating the subject excursion.

85.     At all times material thereto, NCL and TOUR OPERATOR shared any losses sustained from the joint venture.

86.     At all material times, NCL and TOUR OPERATOR communicated to ensure that adequate transportation to and from the excursion was available prior to tickets being sold for the excursion.

87.     NCL and TOUR OPERATOR are jointly and severally responsible for each other's negligence.

88.     At all times material thereto, NCL and TOUR OPERATOR, based on the facts alleged above:

    a.  Had an intention to create a joint venture;

    b.  Had a joint propriety interest in the subject manner of the venture;

    c.  Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

    d.  Had a right to share in the profits of the joint venture; and

    e.  Would share losses that may have been sustained.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

89.     As joint venturers, NCL and TOUR OPERATOR are liable for each other's negligence. As a result, NCL is liable for the negligent conduct of TOUR OPERATOR, and TOUR OPERATOR is liable for NCL's negligence.

90.     At all material times, Defendants knew or should have known of the transportation requirements for the subject excursion based upon the amount of tickets sold.

91.     Accordingly, Defendants had a joint duty to act with reasonable care in providing safe transportation for NCL passengers, including Plaintiff, to and from the excursion site.

92.     As alleged above, the Defendants failed to provide adequate transportation, relying instead upon an ad hoc selection of pickup trucks, which the Defendants knew or should have known to be an inherently dangerous form of transportation.

93.     Alternatively, the Defendants were negligent in the manner in which they operated the pickup truck transportation, through the driver accelerating prematurely and without warning before the Plaintiff was securely seated in the bed of the pickup truck.

94.     As a direct and proximate result of the negligence of Defendant NCL and its joint venturer, TOUR OPERATOR, the Plaintiff was injured as alleged in Paragraph 40 and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant NCL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## COUNT VII – DIRECT NEGLIGENCE AS TO NCL AS COMMON CARRIER

95.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

96.     At all material times, as a Common Carrier, Defendant NCL, individually and/or by and through its service providers, agents, servants, joint venturers and/or employees owed Plaintiff elevated non-delegable duties to provide ingress and egress to and from the ship, which includes transportation to and from the excursion described above.

97.     As alleged above, due to NCL's involvement in the excursion planning process, NCL at all times either knew or should have known that the TOUR OPERATOR did not have access to a sufficient amount of safe transportation to and from the excursion.

98.     Additionally, as alleged above, NCL knew or should have known that it would not be possible to stay on schedule unless alternative, substandard transportation in the form of pickup trucks were used.

99.     NCL further knew or should have known that riding in the bed of a pickup truck was an inherently unsafe manner of transportation.

100.    Notwithstanding, Defendant NCL breached its duty to the Plaintiff by refusing to delay the ship's departure until Passengers such as the Plaintiff could return safely to the ship, or by otherwise providing safe transportation within the existing time window.

101.    As a direct and proximate result of one or more of the Defendant's negligence as described above, the Plaintiff was injured as alleged in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant NCL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## <u>COUNT VII – DIRECT NEGLIGENCE AS TO NCL FOR VOLUNTARY UNDERTAKING</u>

102.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

103.     At all material times, Defendant NCL voluntarily undertook a duty to provide safe transportation to its passengers engaging in the subject shore excursion and owed passengers such as the Plaintiff a duty of reasonable care in this voluntary undertaking.

104.     As alleged above, due to NCL's involvement in the excursion planning process, NCL at all times either knew or should have known that the TOUR OPERATOR did not have access to sufficient safe transportation to and from the excursion site for the NCL passengers participating in the excursion.

105.     Additionally, as alleged above, NCL knew or should have known that it would not be possible to stay on schedule unless alternative, ad hoc and hence inherently risky arrangements for alternative transportation were used, in particular the pickup trucks used in this case.

106.     NCL further knew or should have known that riding in the bed of a pickup truck was an inherently unsafe manner of transportation.

107.     Notwithstanding, Defendant NCL breached its duty to the Plaintiff by refusing to delay the ship's departure until passengers such as the Plaintiff could return safely to the ship, or by otherwise providing safe transportation within the existing time window.

108.     As a direct and proximate result of one or more of the Defendant's negligence as described above, the Plaintiff was injured as alleged in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

**WHEREFORE,** Plaintiff demands judgment against Defendant NCL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands trial by jury of all issues so triable as of right.

Executed September 11, 2024.

*/s/* Philip M. Gerson
PHILIP M. GERSON
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
DAVID L. MARKEL
Florida Bar No. 78306
dmarkel@gslawusa.com
NICHOLAS I. GERSON
Florida Bar No. 0020899
ngerson@gslawusa.com
EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
STEPHEN MATHENY
Florida Bar No. 1049813
smatheny@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145
Telephone:  (305) 371-6000
Facsimile:  (305) 371-5749
*Attorneys for Plaintiff*